CENTURY DISTILLING CO. v. CONTINENTAL DISTILLING CORPORATION.

No. 9789.

United States District Court
E. D. Pennsylvania.

July 15, 1949.

Joseph S. Clark Jr., Philadelphia, Pa., for plaintiff.

Leonard L. Kalish, Philadelphia, Pa., Robert T. McCracken, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

The following memorandum may be taken as an outline for the guidance of the master in determining whether or not to receive evidence offered before him, the purpose being to avoid, so far as possible, loss of time by the usual practice of taking all evidence (except such as is patently inadmissible) subject to objection for a subsequent ruling by the Court. I am aware that the evidence already taken has partially covered several of the points to be mentioned in this memorandum and may have completely covered some of them. It will be understood that the fact that such evidence is mentioned herein as admissible does not warrant its duplication and that the master will be justified in refusing to receive any testimony which in his judgment is unnecessary because merely cumulative.

I have the record of the hearing of February 9, 1949, in which Continental placed before the Court, as concisely as seemed to be possible, what it expects to prove. This memorandum will follow the items offered by Continental in order without repeating them here.

Preliminarily I may say that I am of the opinion that Continental has elected to recover Century's profits. After having spent something like eight years in proving its claim for such profits, and after having shown that substantial profits were made, and after the fullest possible review of the

situation and argument and discussion in which the question of election was emphasized, Continental is still pressing this claim. I am also of the opinion that the proof offered has established Continental's right to recover such profits.

■ The ruling that Continental is entitled to an accounting of Century's profits is not based upon direct competition in the same market. Competition between the two products has already been found as a fact in this case, and although I am sure that very few if any people bought whisky thinking they were buying gin, it must be accepted as established that the products compete in the same general field, so that the sales of one may have an appreciable effect upon the sales of the other. It is not essential to Continental's right to have a recovery of Century's profits, that the parties compete in the same geographically defined markets. I think that under the Mishawaka case (Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.), 316 U.S. 203, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381, where what is claimed is the infringer's profit, competition is not a necessary factor of proof to warrant recovery. In other words, I think that the Mishawaka decision would allow recovery in the hypothetical "New Jersey" situation which was discussed at the argument on January 11, 1949.

### (A) Continental's Lost Sales.

■ In view of the election to recover Century's profits, Continental is not entitled to recover, as an element of damage, the profits which it would have made upon sales which were lost to it as a result of Dixie Dew competition. As will be seen, I am not ruling that profits and damages are wholly mutually exclusive as elements of recovery for trade-mark infringement but, it is obvious that damages for loss of sales means loss of profits on sales and, where the injured party has claimed and proved the profits on sales by the infringer, he has pretty well covered the sales which he has lost. In the Mishawaka case, supra, the Court said " * * * the award of profits is designed to make the plaintiff whole for losses which the infringer has

caused by taking what did not belong to him * * * ", and the Court concluded "If the petitioner suffered damages *beyond the loss of profits* the decree should provide for the assessment of such damages." (Emphasis supplied.)

■ Specifically it is not, in my judgment, allowable for Continental to show that if it had sold its gin to the customers to whom Century sold its whisky, Continental would have made more money from its sales of gin than Century did from its sales of whisky.

### (B) Injury to Continental's Trademark and Goodwill.

■ This is an item of damage which may be recovered, provided it can be proved with sufficient certainty and without trespassing on the field of lost sales, excluded by Continental's election to take Century's profits. For example, loss of sales of Dixie Belle gin during the period of infringement may not be shown in support of this part of the claim, but if it can be shown that, in the post-infringement period, Continental's sales were depressed by reason of impairment of its goodwill due to the infringement, that may be shown. In proving this element it is clear that testimony beyond the mere statistics of the sales curves, already in evidence, will be offered. This testimony counsel has stated will come from what he calls "trade witnesses". This means, of course, expert opinion testimony. In order to put some limit to the proceedings, I will rule that on this point each side may produce two experts, and no more unless allowed by the Court on application and for good reason.

### (C) Continental's Advertising Expenses.

■ Advertising is, of course, a charge against profits. Proof of Continental's total advertising cost would be part of its case in proving what *its* profits would have been had it made the sales which it lost by reason of infringement. Since it has already been ruled that it is not entitled to recover its profits for such lost sales, its entire advertising expenses cannot be recovered. However, Continental may be

able to show that there was some additional margin of expenditure for advertising which was made necessary or advisable and was carried on for the purpose of counteracting the effect of the Dixie Dew infringement. This would be an element of damage and it may be shown.

(D) Continental's Lowered Prices.

■ Here the item claimed is not really part of damages for lost profits on lost sales but it is a distinct element which is recoverable. However, it may be pointed out that it must be proved with reasonable definiteness. On this point I will limit the parties with respect to expert testimony to two opinion witnesses on each side, subject, of course, to enlargement in the discretion of the Court upon application made.

(E) Continental's Increased Selling Expenses.

■ This item is in all respects analogous to item (C) and the same ruling covers it. For example, evidence would be relevant to show that, due to the exploitation of Dixie Dew whisky, Continental was compelled to put on additional salesmen. I make the same limitation in the number of expert witnesses as in the foregoing items.

(F) Continental's Costs and Legal Expenses.

The master is directed to take no further testimony to establish this element of Continental's claim. In all likelihood the proceedings will continue for considerable time and nothing can be gained by taking this testimony piecemeal. This element of the claim is entirely distinct from the other items and my present judgment is that this whole matter could be better dealt with by the Court in the final stage of the proceedings. I am, therefore, not now making any ruling as to whether it is a recoverable item of damage, as distinguished from costs of the case, or, if so, what evidence is competent to establish it.

Unless it is demanded by the parties I shall not enter any formal order at this time. The master will proceed with his hearings, being guided by what has been said in this memorandum. I have some

hope that, with concessions on both sides, this memorandum may furnish a working outline of procedure which may eliminate a good deal of unnecessary testimony and of lost motion.