532 F.Supp. 41 (1982)
DURBIN BRASS WORKS, INC., dba Old English Brass, Ltd., Plaintiff,
v.
Richard A. SCHULER dba Ticonderoga Trading Company aka Lovespoon & Hollowick, Defendant.
No. 81-0086C(4).
United States District Court, E. D. Missouri, E. D.
January 15, 1982.
*42 Donald R. Morin, Carter, Brinker, Doyen & Kovacs, St. Louis, Mo., for plaintiff.
Edward H. Renner, Roger, Eilers & Howell, St. Louis, Mo., for defendant.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court for an accounting for a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This Court, on June 5, 1981, issued a permanent injunction against defendant in this cause for violation of § 43(a). The Court issued a preliminary injunction against defendant on March 25, 1981.
The Court held a nonjury trial in this cause on September 22, 1981, allowing the parties a full opportunity to present evidence.
Having considered the pleadings, trial testimony, exhibits, stipulations, and memoranda of the parties, and being fully advised in the premises, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. The findings of fact of the Court's order of March 25, 1981, in this cause are hereby incorporated into and made a part of these findings of fact.
2. Defendant began selling the imported lamps in question on June 27, 1980. Defendant sold approximately 2,410 lamps between June of 1980 and the time of trial, at prices ranging from approximately $33.00 to $70.00, for total gross sales of $91,249.59.
3. Defendant sold lamps to several major customers as follows:

Anheuser-Busch
454 at $39.50 each $17,933.00
Orvis Company
145 at $37.00 each 5,365.00
Weems & Plath
760 at $33.18 each 25,216.80

The Court finds from the evidence that Weems & Plath and Orvis Company purchased the lamps with actual knowledge prior to purchase that defendant's lamps were made in Taiwan. Plaintiff concedes that lamps received with actual knowledge that they were made in Taiwan are not to be considered in the Court's accounting.
4. The total expenses of defendant in effecting the sales of the 2,410 lamps were $98,663.29. Of this total, $5,250.00 was allocated for defendant's partner, Verna Schuler's salary.
5. Plaintiff presented evidence in the form of the deposition of defendant to show that defendant sold far more than 2,410 lamps. Defendant, in portions of his deposition testimony, stated that the sales figures for the lamps were rough estimates and that his partner, Verna Schuler, who kept the books, could supply the exact figures. Therefore, the Court finds that the detailed figures supplied in defendant's interrogatory answers and by the testimony of Verna Schuler are more accurate than the deposition testimony of defendant. The Court gives little weight to the sales figures derived from defendant's deposition.
6. Plaintiff presented evidence that its sales of lamps were lower from June, 1980, through October, 1980, than they were from November, 1980, through the time of trial. Witness Alan Durbin, president of plaintiff corporation, claimed that defendant's sales caused the decline in plaintiff's sales and the confusion of origin between plaintiff's and defendant's lamp caused damage to the good will of plaintiff. Plaintiff prays for $15,000.00 as compensation for loss of good *43 will. The Court finds plaintiff's evidence on damages for loss of good will is speculative. While there was evidence of actual confusion of products, there was also evidence that there are other competitors selling highly similar products. Plaintiff presented no expert testimony to support the contention that a loss of good will was the cause of plaintiff's decline in sales.
7. Alan Durbin also testified that it would cost plaintiff approximately $10,000.00 for advertising to eliminate the confusion between plaintiff's and defendant's lamps. Of the $10,000.00, $7,500.00 would go toward placing ads for three months in three of the principal trade publications relevant to plaintiff's market. The remaining $2,500.00 would go toward a direct mailing to customers of plaintiff and defendant.
8. Plaintiff's lamps are advertised in a mail order publication called "The Sharper Image." The description accompanying the ad claims that plaintiff's lamps are suitable for use in coal mines. The Court finds that plaintiff had no control over the language in the ad.
9. Defendant presented evidence that plaintiff has instituted a suit against the American Express Company in connection with the sale of defendant's lamps by American Express. After the filing of that lawsuit, American Express elicited a settlement offer from plaintiff's attorney. Plaintiff offered to settle with American Express, agreeing to dismiss the suit if American Express would include plaintiff's lamp in its upcoming catalog. American Express made its own offer of money and a mailing of some kind of notice to all purchasers of lamps through American Express. No evidence was presented that either offer was accepted.
10. Plaintiff presented evidence that its attorney's fees in connection with this cause were $15,901.45 through September 5, 1981.

Conclusions of Law
1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338.
2. In addition to injunctive relief, the remedies available for violations of 15 U.S.C. § 1125(a) are set forth in 15 U.S.C. § 1117. Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710 (8th Cir. 1980). The remedies are as follows:
(1) defendant's profits;
(2) damages sustained by plaintiff; and
(3) costs of the action.
In exceptional cases, the court may award reasonable attorney's fees to the prevailing party. Id.
3. Monetary awards under 15 U.S.C. § 1117 are subject to the principles of equity. Id.
4. Defendant claims that plaintiff's actions surrounding the suit against American Express and the Sharper Image catalog constitutes wrongful conduct that should preclude the award of any damages. (See findings of fact ¶ 4.) While the maxim that a party who seeks equity must do equity applies to this action, the Court concludes that plaintiff's conduct is not sufficiently related to this action or of such severity or culpability to bar monetary relief. See Eastman Kodak Co. v. Fotomat Corp., 317 F.Supp. 304 (N.D.Ga.1969), appeal dismissed, 441 F.2d 1079 (5th Cir. 1971).
5. The primary dispute in this action is whether the evidence supports an award of defendant's profits from the sale of lamps. 15 U.S.C. § 1117, supra, requires that plaintiff only has to prove defendant's sales, while defendant must prove all elements of cost or deductions claimed.
6. Out of the 2,410 lamps sold by defendant, 905 of them were sold to Orvis Company and Weems & Plath with knowledge of their origin. Plaintiff concedes that lamps sold with knowledge of origin are not subject to this accounting. Therefore, the lamps subject to the accounting and the gross revenue from their sale are as follows:

 2,410 lamps sold for $91,241.59
 - 905 lamps sold for 30,581.18
 __________
 $60,668.41

*44 7. The total expenses for the sale of all of defendant's lamps was $98,663.29. The only expense seriously disputed by plaintiff was Verna Schuler's salary of $5,250.00. The Court concludes that the salary of a partner should not be deducted as an expense. Callaghan v. Myers, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547, (1888); Wolfe v. National Lead Co., 272 F.2d 867 (9th Cir. 1959), cert. denied, 362 U.S. 950, 80 S.Ct. 860, 4 L.Ed.2d 868, (1960), (overruled on other issues by Maier Brewing Co. v. Fleischmann Distilling Corp., (9th Cir. 1966), aff'd, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, (1967)). The total deductible expenses, therefore, are $93,413.29.
8. Since defendant's total deductible expenses ($93,413.29) exceed the total gross revenue ($91,249.59), there is no profit from defendant's sale of lamps. The Court concludes, therefore, that defendant had no profits from which an award can be made to plaintiff.
9. Plaintiff asks for damages in the amount of $10,000.00 for corrective advertising to remedy the confusion between plaintiff's and defendant's lamps. There is authority for awarding expenses necessary in preventing purchasers from being deceived by defendant's wrongful conduct under 15 U.S.C. § 1117. Obear-Nester Glass Co. v. United Drug Co., 149 F.2d 671, 674 (8th Cir.) cert. denied, 326 U.S. 761, 66 S.Ct. 141, 90 L.Ed. 458 (1945) (expenses incurred to prevent deception of purchasers by wrongdoer's conduct); Taussig v. Wellington Fund, Inc., 187 F.Supp. 179 (D.Del. 1960), aff'd, 313 F.2d 476 (3d Cir.), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031, (1963) (advertising expenses or change of name incurred in order to differentiate plaintiff's product from wrongdoer's); Century Distilling Co. v. Continental Distilling Corp., 86 F.Supp. 503, 505-06 (E.D.Pa.1949), aff'd, 205 F.2d 140 (3d Cir. 1953) (advertising necessary to counteract wrongdoer's conduct). The Court concludes that, given the evidence of actual confusion, an award for corrective advertising is appropriate. Plaintiff's evidence of cost is reasonable. The Court, therefore, concludes that plaintiff should be awarded $10,000.00 as damages under 15 U.S.C. § 1117.
10. Plaintiff claims damages in the amount of $15,000.00 for loss of good will. The Court concludes that the evidence presented by plaintiff does not support the damage amount with sufficient certainty. See Century Distilling Co. v. Continental Distilling Corp., supra at 505 (injury to good will recoverable if proved with sufficient certainty).
11. The Court concludes that plaintiff should be awarded costs for this action, including the injunction proceedings against defendant. 15 U.S.C. § 1117.
12. Plaintiff seeks recovery of its attorney's fees incurred in connection with this action. Under 15 U.S.C. § 1117, attorney's fees are awarded only in exceptional cases where defendant's violation was malicious, fraudulent, or willful. Amana Soc. v. Gemeinde Brau, Inc., 417 F.Supp. 310 (N.D. Iowa 1976), aff'd, 557 F.2d 638 (8th Cir.), cert. denied, 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454, (1977); Scotch Whiskey Asso. v. Consolidated Distilled Products, Inc., 210 U.S.P.Q. 639 (N.D.Ill.1981). The Court concludes that defendant's conduct is not sufficiently malicious to justify an award of attorney's fees. Id.
13. Defendant, based on the evidence relative to the suit against American Express and the advertising in the Sharper Image catalog (finding of fact ¶ 4), asks the Court to dissolve the permanent injunction. The Court concludes that the conduct of plaintiff is not sufficiently related to the subject of the permanent injunction to warrant the relief requested. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293, (1933); Republic Molding Corp. v. B. W. Photo Utilities, 319 F.2d 347 (9th Cir. 1963).