UNITED STATES of America,
Plaintiff-Appellee,

and

Quinault Indian Tribe,
Plaintiff-Intervenor-Appellee,

v.

STATE OF WASHINGTON; Washington State Department of Game, et al.,
Defendants-Appellants,

In re CHEHALIS RIVER CONTEMPT CITATIONS.

No. 84–3999.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided May 29, 1985.

As Amended June 5, 1985.

■■■

---

Donald T. Hornstein, Atty., Anne S. Almy, Washington, D.C., F. Henry Habicht, II, Gene S. Anderson, Seattle, Wash., George D. Dysart, Asst. U.S. Atty., Portland, Or., for the U.S.

Richard Reich, Taholah, Wash., Phillips E. Katzen, Seattle, Wash., for Quinault Indians.

Kenneth O. Eikenberry, Atty. Gen., Thomas F. Carr, Asst. Atty. Gen., Dennis D. Reynolds, Mary Elizabeth Harney, Olympia, Wash., for defendants-appellants.

Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The State of Washington appeals from the district court's order of contempt in yet another dispute concerning Indian Treaty fishing rights in the Pacific Northwest. *United States v. Washington*, 384 F.Supp. 312, 327–28 (W.D.Wash.1974) (*Boldt I*), aff'd, 520 F.2d 676 (9th Cir.1975), *cert. denied*, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). The state also appeals the trial court's injunction of any further intervention in the absence of prior court authorization. We have jurisdiction over this appeal, 28 U.S.C. § 1291, and affirm.

## FACTS

In 1983, the Quinault Indian Nation opened the Chehalis River to commercial

tribal net fishing for three, five-day periods beginning at noon on January 9, 16 and 23. The second of these periods was curtailed prematurely when the State Game Commission (Commission) determined that the permissible tribal catch would be exceeded prior to the scheduled weekly closure. Consequently, the Commission promulgated Order 190 which sought to close the fishery at 6:00 p.m. on Thursday, January 20. The Commission also scheduled an enforcement proceeding to begin at 8:00 a.m., Friday, January 21.

Alerted to the probable surpassing of their permissible catch, the Quinaults acted to cancel the final fishery which was scheduled to begin on Monday, January 23. The effect of this activity was that all tribal fishing would cease at noon on Friday, January 21, four hours after the enforcement action was scheduled to begin.

It is evident that, as of Thursday, January 20, both Tribe and Commission knew of the conflict between their closures. Neither side, however, took any steps to convene the Fisheries Advisory Board or to seek relief in court as provided in *Boldt I.*

At 8:00 a.m., Friday, January 21, armed agents of the Washington Department of Game commenced the enforcement action. Travelling in three jet boats, they descended on the Tribal fishery, confiscating nets and ultimately issuing citations to two Quinault Tribal members.

The Quinault Tribe and the United States filed contempt proceedings against the State of Washington alleging violations of *Boldt I.* The matter was referred to a magistrate whose report and recommendation were submitted, together with his proposed order and findings of fact, to the district court. Following a *de novo* review of the magistrate's findings and recommendations, the district court entered judgment for the Quinault Tribe. The court found the State of Washington in contempt of the prior court order and enjoined any further intervention for purposes of allocation by the state or its agencies in the absence of prior court or Fishery Advisory Board approval.

## DISCUSSION

### A. *Standard of Review*

We review the district court's decision to hold the state in contempt under the abuse of discretion standard. *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir.1982). The interpretation of an injunction and its application to undisputed facts is, however, a question of law subject to *de novo* review. *Id.* at 892.

### B. *The Contempt Citation*

The district court did not err in finding the state in contempt. The 1974 injunction in *Boldt I* specifically forbids state interference with treaty fishing by self-regulating tribes except for *conservation* purposes. *United States v. Washington,* 520 F.2d 676, 683 (1975), *cert. denied,* 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976).

The state contends that it retains the authority to preserve fisheries for non-treaty fishermen once the tribe has taken its allocated share. Once a tribe has exceeded this allocation, they argue, fishing by its members is no longer "treaty right" fishing and the state may then "step in with impunity" to protect the non-tribal share.

This contention fails in view of the language of *Boldt I.* In *Boldt I,* the court limited the state's regulatory police power over off-reservation fishing to only "the extent reasonable and necessary for conservation of the resource." *United States v. Washington,* 384 F.Supp. at 414–15. Allocation disputes are to be resolved by negotiation and mediation through the Fisheries Advisory Board or by the courts, not through unilateral intervention based on an ex parte decision.

### C. *Clean Hands Doctrine*

Nor are we persuaded that the Tribe is foreclosed from relief by operation of the clean hands doctrine. We have weighed the substance of the tribal right to be self-regulating against the alleged transgression, failing to notify the state

that a long-standing interim closure was now a permanent closure, and conclude that the transgression does not outweigh the right. *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 350 (9th Cir.1963).

### D. *The Injunction*

Our review leads us to conclude that the district court did not abuse its discretion in fashioning injunctive relief in the instant matter. *See United States v. Asay,* 614 F.2d 655, 660 (9th Cir.1980) (relief granted in contempt proceeding is subject to review for abuse of discretion).

The order entered is reasonably calculated to compel obedience to the dictates of *Boldt I.* The injunction seeks to prevent the State of Washington or its agents from interfering with tribal fishing rights, except as authorized in the initial decision. The injunction reflects the law of the case by prohibiting state regulation of *all* treaty fisheries for purposes of allocation not just those of self-regulating tribes. *See Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 682, 99 S.Ct. 3055, 3072, 61 L.Ed.2d 823 (1979) ("treaty fishermen are immune from all [state] regulation save that required for conservation").

### CONCLUSION

For the foregoing reasons, the decision of the district court finding the state of Washington in contempt and enjoining further allocation closures by the state or its agencies, is

AFFIRMED.